**RECEIVED**
IN LAKE CHARLES, LA

MAR 31 2009

ROBERT H. SHEMWELL, CLERK
WESTERN DISTRICT OF LOUISIANA

**UNITED STATES DISTRICT COURT**

**WESTERN DISTRICT OF LOUISIANA**

**LAKE CHARLES DIVISION**

| | | |
|---|---|---|
| DAVID WAYNE GUILLORY | : | DOCKET NO. 2:07 CV 1683 |
| VS. | : | JUDGE MINALDI |
| MITCH PELLERIN ET AL. | : | MAGISTRATE JUDGE KAY |

## MEMORANDUM RULING

Before the Court is a motion for partial summary judgment, filed by Invacare Corporation (hereinafter "Invacare"), seeking to dismiss claims arising pursuant to the Louisiana Products Liability Act (hereinafter "LPLA") [doc. 100]. David Wayne Guillory did not file an Opposition.

## PROCEDURAL HISTORY

Mr. Guillory filed suit in the 33rd JDC on May 31, 2007.[1] Invacare removed the suit to federal court on October 10, 2007.[2] Mr. Guillory, who has spina bifida, is suing for injuries he allegedly sustained after purchasing a pair of Invacare crutches that broke.[3] Mr. Guillory also brought suit against Professional Medical Supplies (hereinafter "PMS"), the supplier of the crutches, and Mitchell Pellerin, the person who sold him the crutches. This Court has since dismissed PMS and Mr. Pellerin from this suit.[4]

---

[1] Compl. [doc. 1-1].

[2] Notice of Removal [doc. 1].

[3] Compl.

[4] *See* docs. 64 & 98.

1

Mr. Guillory brings suit against Invacare pursuant to the LPLA and in redhibition.[5] Mr. Guillory alleges that the crutches contain a manufacturing defect that existed at the time of the sale, and that the crutches failed to support Mr. Guillory during normal use.[6]

## SUMMARY JUDGMENT STANDARD

A court should grant a motion for summary judgment when the pleadings, including the opposing party's affidavits, "show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). The party moving for summary judgment is initially responsible for demonstrating the reasons justifying the motion for summary judgment by identifying portions of pleadings and discovery that show the lack of a genuine issue of material fact for trial. *Tubacex, Inc. v. M/V Risan*, 45 F.3d 951, 954 (5th Cir. 1995). The court must deny the moving party's motion for summary judgment if the movant fails to meet this burden. *Id.*

If the movant satisfies this burden, however, the nonmoving party must "designate specific facts showing that there is a genuine issue for trial." *Id.* (quoting *Celotex*, 477 U.S. at 323). In evaluating motions for summary judgment, the court must view all facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp*., 475 U.S. 574, 587 (1986). There is no genuine issue for trial, and thus a grant of summary judgment is warranted, when the record as a whole "could not lead a rational finder of fact to find for the non-moving party. . . ." *Id.*

---

[5] Compl.

[6] *Id.* ¶¶ 5-7.

# LAW

The LPLA states that "[t]he manufacturer of a product shall be liable to a claimant for damage proximately caused by a characteristic of the product that renders the product unreasonably dangerous when such damage arose from a reasonably anticipated use of the product by the claimant or another person or entity." La. Rev. Stat. Ann. § 9:2800.54(A). The LPLA is the exclusive theory of recovery against a manufacturer. *Id.* § 9:2800.52. To recover pursuant to the LPLA, a plaintiff must demonstrate four requirements:

> (1) that the defendant is a manufacturer of the product; (2) that the claimant's damage was proximately caused by a characteristic of the product; (3) that this characteristic made the product "unreasonably dangerous"; and (4) that the claimant's damage arose from a reasonably anticipated use of the product by the claimant or someone else.

*Stahl v. Novartis Pharm. Corp.*, 283 F.3d 254, 260-61 (5th Cir. 2002).

Under the LPLA, a product is "unreasonably dangerous" and therefore satisfies the third element, when at least one of the following elements is present:

> (1) The product is unreasonably dangerous in construction or composition as provided in R.S. 9:2800.55;
>
> (2) The product is unreasonably dangerous in design as provided in R.S. 9:2800.56;
>
> (3) The product is unreasonably dangerous because an adequate warning about the product has not been provided as provided in R.S. 9:2800.57; or
>
> (4) The product is unreasonably dangerous because it does not conform to an express warranty of the manufacturer about the product as provided in R.S. 9:2800.58.

*Id.* at 261 (quoting La. Rev. Stat. Ann. § 9:2800.54(B)).

## ANALYSIS

Invacare maintains that Mr. Guillory cannot demonstrate the third element of his LPLA claim—that the crutches were unreasonably dangerous—and therefore seeks summary judgment as to his LPLA claims. Mr. Guillory's deadline for expert reports was February 25, 2009.[7] Mr. Guillory did not request an extension of this deadline, despite the Magistrate Judge's specific Order that any request for an extension of expert reports was to occur prior to the deadline's expiration.[8] Moreover, Mr. Guillory did not timely provide any expert reports. Finally, Mr. Guillory did not file an opposition, and therefore did not present any summary judgment evidence to refute this motion for summary judgment. Although it appears to the Court that Mr. Guillory's complaint only alleges a manufacturing defect, because out of "an abundance of caution" Invacare moves for summary judgment presuming that Mr. Guillory alleged all four scenarios, this Court shall similarly address all four scenarios.

### A.) Unreasonably Dangerous in Construction or Composition

Mr. Guillory's complaint alleges manufacturing defects, and therefore he brings a "construction or composition" defect claim pursuant to the LPLA. Accordingly, Mr. Guillory must show that at the time the product left the manufacturer's control, "the product deviated in a material way from the manufacturer's specifications or performance standards for the product or from otherwise identical products manufactured by the same manufacturer." La. Rev. Stat. Ann. § 9:2800.55; *see also Stahl*, 283 F.3d at 261. In his interrogatories, Mr. Guillory contends that the "adjustable screw and wing nut and the adjustable holes going through the aluminum crutch make the crutch weak. These holes egg out on both sides of the aluminum tube and elongate the aluminum

---

[7] Scheduling Order (May 14, 2008) [doc. 16].

[8] Order (Jan. 28, 2009) [doc. 74].

fractures."[9]

In *Stahl*, the Fifth Circuit upheld the district court's award of summary judgment dismissing the plaintiff's "unreasonably dangerous in construction or composition" claim. 283 F.3d at 263. The defendant pharmaceutical company, Novartis, moved for summary judgment because the record contained no support for the plaintiff's claim. *Id.* On appeal, the plaintiff argued the district court improperly applied the summary judgment standard by placing the burden on him. *Id.* The Fifth Circuit, however, upheld the decision, stating that "if the non-moving party can point to nothing in the record supporting its claim, summary judgment is appropriate." *Id.* (noting that "in such a situation there can be no genuine issue as to any material fact, since there has been a 'complete failure of proof concerning an essential element of the nonmoving party's case'").

Similarly, there is no summary judgment evidence in the record supporting a claim that the crutches are unreasonably dangerous in construction or composition. There is no indication that the crutches deviated in a material way from the manufacturer's specifications or performance standards, as is required under La. Rev. Stat. Ann. § 9:2800.55.

## B.) Unreasonably Dangerous in Design

Invacare also moves for summary judgment, arguing that Mr. Guillory cannot demonstrate that his crutches had an unreasonably dangerous design. In his response to interrogatories, Mr. Guillory states that the crutches are unreasonably dangerous in design because they are made in Mexico and China, and that crutches made in Ohio are better.[10] He further contends that the holes in the aluminum make the crutches weak, and a better design would involve a titanium sleeve.[11]

---

[9] Pl.'s Resp. to Def.'s Interrog. # 22.

[10] *Id.* # 3.

[11] *Id.* # 19.

Pursuant to the LPLA:

> A product is unreasonably dangerous in design if, at the time the product left its manufacturer's control:
>
> (1) There existed an alternative design for the product that was capable of preventing the claimant's damage; and
>
> (2) The likelihood that the product's design would cause the claimant's damage and the gravity of that damage outweighed the burden on the manufacturer of adopting such alternative design and the adverse effect, if any, of such alternative design on the utility of the product. An adequate warning about a product shall be considered in evaluating the likelihood of damage when the manufacturer has used reasonable care to provide the adequate warning to users and handlers of the product.

La. Rev. Stat. Ann. § 9:2800.56. When evaluating defective design cases, courts employ a risk-utility analysis that requires the court to first determine what risk, if any, the product presents. *Krummel v. Bombardier Corp.*, 206 F.3d 548, 551 (5th Cir. 2000). Next, the court determines whether a reasonable person would determine that the danger of the product outweighs the value of the product. *Id.* This inquiry requires the plaintiff to " show evidence 'concerning the frequency of accidents like his own, the economic costs entailed by those accidents, or the extent of the reduction in frequency of those accidents that would have followed on the use of his proposed alternative design.'" *Id.* (quoting *Lavespere v. Niagra Mach. & Tool Works, Inc.*, 910 F.2d 167, 183 (5th Cir. 1990)). Moreover, a judge may not presume a product is dangerously designed simply because an injury occurred. *Id.* at 552.

There is no competent summary judgment evidence in the record pertaining to the frequency of similar accidents, the costs of these accidents, or the effect any proposed alternative design would have in reducing the frequency of such accidents. Accordingly, there is no genuine issue of material fact for trial as to whether the crutches were defectively designed.

6

## C.) Inadequate Warning

Invacare also moves for summary judgment on any possible failure to warn claim pursuant to the LPLA. In his answers to interrogatories, Mr. Guillory states that Invacare failed to provide an adequate warning for the crutches because they state they can hold 250 pounds, but he weighs less than 200 pounds and the crutches broke.[12] Further, Mr. Guillory suggests that "maybe it should exclude people that are paraplegics because they tend to put more weight on the crutch and there should be a warning for paraplegics regarding possible dangers."[13]

"To successfully maintain a failure-to-warn claim under the LPLA, a plaintiff must demonstrate that the product in question has a potentially damage-causing characteristic and that the manufacturer failed to use reasonable care to provide an adequate warning about this characteristic." *Stahl*, 283 F.3d at 264. To satisfy the first prong, Mr. Guillory must present evidence about the "cause, frequency, severity, or consequences" of the damage-causing characteristic. *Id.* Moreover, the Fifth Circuit has found that even if a product is not defectively designed, a plaintiff can still prevail if the manufacturer has a duty to warn about some characteristic "that unreasonably may cause damage." *Grenier v. Med. Eng'g Corp.*, 243 F.3d 200, 205 (5th Cir. 2001) (noting that "manufacturers have no duty to warn of dangers that are obvious to ordinary users").

In *Grenier*, the Fifth Circuit held that the district court properly dismissed the plaintiff's failure to warn claim against a manufacturer of silicone gel breast implants because the plaintiff had presented no evidence pertaining to the "cause, frequency, severity, or consequences" of the damage-causing characteristic. *Id.* The Fifth Circuit noted that the precise question was not whether the defendant failed to warn the plaintiff that her breast implants were defective, but rather whether the

---

[12] *Id.* # 20.

[13] *Id.*

7

plaintiff presented proper evidence that the implants have potentially damage-causing characteristics and whether the defendant failed to use "reasonable care to provide an adequate warning." *Id.* (stating that "without a proper understanding of the implants' damage-causing characteristics, the scope of [the defendant's] duty to warn is unclear"). Moreover, a plaintiff must demonstrate specific facts in the record that a warning is inadequate. *Stahl*, 283 F.3d at 264.

Here, as in *Grenier*, the plaintiff has presented no evidence pertaining to the damage-causing characteristic. Mr. Guillory's sole basis for any potential failure to warn claim is the fact that the crutches state they are safe for 250 pounds, and he weighs less than 200 pounds and was injured. Mr. Guillory fails to present evidence as to the cause, frequency, severity, or consequence of any damage-causing characteristic. Without a proper understanding of the crutches' damage-causing characteristics, the scope of any duty to warn is unclear. Moreover, Mr. Guillory testified that he did not need Invacare to tell him how to use the crutches,[14] so it appears that he acknowledges that Invacare's warnings were adequate. Accordingly, any failure to warn claim shall be dismissed.

## D.) Failure to Conform to Express Warranty

Mr. Guillory states that the crutches do not conform to an express warranty because they have writing on them stating they would hold a 250-pound person and he weighs less than 200 pounds.[15] Pursuant to La. Rev. Stat. Ann. § 9:2800.58:

> A product is unreasonably dangerous when it does not conform to an express warranty made at any time by the manufacturer about the product if the express warranty has induced the claimant or another person or entity to use the product and the claimant's damage was proximately caused because the express warranty was untrue.

---

[14] Guillory Dep. 108-09, Feb. 4, 2009.

[15] Pl.'s Resp. to Def.'s Interrog. # 21.

8

To survive summary judgment, Mr. Guillory must provide evidence that would create a genuine issue of material fact that:

> (1) the manufacturer made an express warranty regarding the product, (2) the plaintiff was induced to use the product because of that warranty, (3) the product failed to conform to that express warranty, and (4) the plaintiff's damage was proximately caused because the express warranty was untrue.

*Caboni v. Gen. Motors Corp.*, 278 F.3d 448, 452 (5th Cir. 2002). An express warranty is:

> a representation, statement of alleged fact or promise about a product or its nature, material or workmanship that represents, affirms or promises that the product or its nature, material or workmanship possesses specified characteristics or qualities or will meet a specified level of performance. "Express warranty" does not mean a general opinion about or general praise of a product. A sample or model of a product is an express warranty.

*Id.* at 451-52 (quoting La. Rev. Stat. Ann. § 9:2800.58).

Even if Mr. Guillory could establish that Invacare created an express warranty by the words "250-pound capacity," he cannot establish a genuine issue of material fact as to whether any express warranty induced him to use the crutches. In his interrogatories, Mr. Guillory stated that the only crutches they had were 250-pound crutches,[16] and therefore he was not induced to use the crutches because they stated a capacity of 250 pounds. Accordingly, there is no evidence that Mr. Guillory was induced to use Invacare's crutches by any possible express warranty that the crutches could support 250 pounds.

## CONCLUSION

This Court finds that there are no genuine issues of material fact for trial as to Mr. Guillory's LPLA claims, and that Invacare is entitled to judgment as a matter of law; accordingly,

---

[16] *Id.* # 4.

9

IT IS ORDERED that Invacare's motion for summary judgment, [doc. 100], is hereby GRANTED;

IT IS FURTHER ORDERED that this case is hereby DISMISSED in its entirety.

Lake Charles, Louisiana, this ___ day of _____, 2009.

PATRICIA MINALDI
UNITED STATES DISTRICT JUDGE